UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| SHAWN BAILEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 4:15-CV-00968 ERW |
| BRITNEY COFFMAN, et al., | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment [ECF No. 28].

**I.   Background**

Shawn Bailey, ("Plaintiff"), an inmate in the Missouri Department of Corrections, filed a complaint alleging Britney Coffman, Matthew Reed, Christine Henson and Steven Brouk ("Defendants") used excessive force and were deliberately indifferent to his serious medical needs. [ECF No. 1] Defendants argue Plaintiff cannot show his claims rise to the level of any constitutional violation, and therefore his claims against Defendants fail as a matter of law. [ECF No. 30] Plaintiff has not responded to Defendants' motion, even after the Court issued an order for Plaintiff to show cause why the Court should not grant Defendants' motion order by September 14, 2016. [ECF No. 33].

   *A.   Factual Background*

Plaintiff did not respond to Defendants' Statement of Material Facts [ECF No. 29], as required under Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule 4.01(E). Plaintiff's status as a *pro se* prisoner does not excuse him from responding to Defendants' motion "with

1

specific factual support for his claims to avoid summary judgment,", or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983; *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993) (failing to allow *pro se* prisoner to disregard Federal Rules of Civil Procedure). With his failure to respond, Plaintiff is deemed to have admitted all of the facts in Defendants' statement of uncontroverted facts. *Turner v. Shinseki*, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D.Mo. Jun. 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F.Supp.2d 1166, 1168 (E.D.Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877); *Davis v. Webb*, No. 4:11-CV-1906-JAR, 2014 WL 1314938, at *1 (E.D. Mo. Mar. 28, 2014), *reconsideration denied*, 2014 WL 1809680 (E.D. Mo. May 7, 2014), and *aff'd* 590 F. App'x 655 (8th Cir. 2015); *Foster v. Lombardi*, No. 1:12-CV-116 JAR, 2014 WL 636042, at *1 (E.D. Mo. Feb. 18, 2014).

Summary judgment is not granted for Defendants as a result of Plaintiff's failure to properly respond to Defendant's statement of material facts. Instead, the Court deems the facts set forth by Defendants as true. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendants must still establish they are entitled to judgment as a matter of law. *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 191 (Mo. Ct. App. 2010) (citations omitted). The Court has also reviewed video recordings of the incidents. [ECF Nos. 30-4, 30-5, 30-6, 30-10]. While the videos do not allow for a perfect depiction of what occurred, they generally depict the facts as described by Defendants. The facts are as follows.

Plaintiff is an inmate incarcerated at Southeast Correctional Center in Charleston, Missouri, but at all relevant times during his complaint he was incarcerated at Potosi Correctional Center ("PCC"), in the Missouri Department of Corrections ("MDOC"). [ECF Nos. 34, 29 at ¶ 1]. Defendants Britney Coffman, Christine Henson, Matthew Reed, and Steven Brouk were

correctional officers employed by MDOC at PCC during all relevant times of this lawsuit. [ECF No. 29 at ¶ 2]

On December 23, 2014 Defendants Henson and Coffman escorted Plaintiff from his cell to administrative segregation, and Plaintiff began to insult, threaten and spit at Defendants Henson and Coffman. *Id.* at ¶¶ 3-5. Defendant Reed joined the escort, where Plaintiff continued to be verbally combative. *Id* at ¶ 6. Plaintiff was then brought to the medical unit where he refused treatment. *Id.* at ¶ 7.

Offenders which spit, threaten or are belligerent pose safety risks to officers and other inmates. *Id.* at ¶ 8. Outside of the infirmary, Defendant Henson placed Plaintiff against a wall, ordered him to be quiet and Plaintiff continued to be verbally combative and physically resistant. *Id.* at ¶¶ 10-11. Defendant Henson then forced Plaintiff against a wall, and issued a second warning. *Id.* at ¶ 11. Plaintiff then attempted to avoid being taken to the ground by Defendants, and it took cooperative effort by more than four additional officers to regain physical control of Plaintiff. *Id.* at ¶¶ 12-14. As a result of the incident, Defendant Reed sought medical attention for a head injury, Defendant Coffman sought medical attention for an elbow injury, and Plaintiff suffered a minor lip laceration, cuts on his legs and a sore shoulder. *Id.* at ¶¶ 15-17.

After Plaintiff was secured in a cell by multiple corrections officers, Defendant Reed attempted to remove Plaintiff's restraints through a food port in the door. *Id.* at ¶ 18. After having partially removed his restraints, Plaintiff grabbed Defendant Reed's arm and tried to pull it through the port. *Id.* at ¶ 19. Defendant Reed then pulled back on Plaintiff's arm, since a partially removed restraint may be a weapon, and Plaintiff received scrapes and bruises from the pull. *Id.* at ¶¶ 20-21. Plaintiff requested a nurse after the incident, requesting the nurse clean blood off of him, refused any additional medical treatment and did not mention any injuries

received by any Defendant. *Id.* at ¶¶ 22 -23, 25. Defendants Coffman, Henson and Reed were not assigned to administrative segregation on this day, and were only tasked with bringing Plaintiff to administrative segregation. *Id.* at ¶ 24.

On January 9, 2015, Defendant Brouk witnessed Plaintiff flushing contraband down the toilet, Plaintiff knew this was against the rules, and Plaintiff refused Defendant Brouk's instructions to cease flushing items down the toilet and submit to restraints. *Id.* at ¶¶ 26-29. Defendant Brouk then sprayed Plaintiff with a short burst of pepper spray, in accordance with policy preventing destruction of contraband. *Id.* at ¶¶ 30-31. After Plaintiff failed to comply Defendant Brouk sprayed Plaintiff with pepper spray, again. *Id.* at ¶ 32. Plaintiff then complied, was restrained by Defendant Brouk, and Plaintiff was permitted to see a nurse for eye drops. *Id.* at ¶¶ 33-34.

Plaintiff filed an Informal Resolution Request ("IRR") for the incident on December 23, 2014, alleging he was assaulted by Defendant Henson in anger, requested an immediate transfer away from Defendant Hensen, and requested the video recordings of the incident be reviewed. *Id.* at ¶ 35, [ECF No. 30-12 at 2]. Plaintiff alleges he filed a grievance, after his IRR was denied. [ECF No. 7]. Plaintiff does not reveal with whom he filed this grievance, and to whom he addressed it. [ECF No. 29 at ¶ 39]. There is no evidence in his file suggesting a grievance was filed. *Id*. at ¶ 36. After the denial of the IRR, Plaintiff also wrote a letter to Deputy Warden Jamie Crupp, asking why she had not reviewed the video. [ECF No. 30-12 at 5]. Deputy Warden responded she had reviewed the video and believed the violations he received were justified. *Id.* at 4.

## II.     Standard

Summary judgment is proper only if there exists "no genuine issue as to any material fact"

4

and the moving party is entitled to judgment as a matter of law. Fed. R. of Civ. Proc. 56(c); *Bores v. Domino's Pizza, LLC*, 530 F3d 671, 674 (8th Cir. 2008). The burden of proof is on the party moving for summary judgment, and all facts and reasonable inferences are to be viewed in the light most-favorable to the non-moving party. *Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008). "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, 'the nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003) quoting *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998).

Material facts are determined by substantive law, and factual disputes which are irrelevant or collateral do not preclude Summary Judgement. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is a genuine issue, where the evidence is such a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

"[C]ourts must be sensitive to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and we do not approve summary dismissal of such *pro se* claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980) (internal citations removed) (affirming grant of summary judgment to Defendants where plaintiff prisoner stated only that he could not gather information because he was imprisoned) (citing *Hudson v. Hardy*, 412 F.2d 1091 (D.C.Cir.1968)). Further, allegations of *pro se* prisoner plaintiffs are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). However, *pro se* prisoners are still required to follow the rules of civil procedure and local rules. *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir.1993).

## III. Discussion

Defendants, in their summary judgment motion, argue Plaintiff failed to exhaust his administrative remedies; Defendants did not use excessive force in either the December 23, 2014 incident or the January 9, 2015 incident; they were not deliberately indifferent to Plaintiff's serious medical needs; and they are entitled to qualified immunity. [ECF Nos. 28, 30].

### A. Administrative Exhaustion Requirement

Defendants argue in their summary judgment motion, because Plaintiff did not exhaust his administrative remedies through the PCC internal grievance procedure, his claims must be denied. Plaintiff alleges in his complaint he filed a grievance but Defendants lost this grievance.

Under the PLRA, a prisoner may not bring a § 1983 action unless he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion under the PLRA means proper exhaustion, which is compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). In order for a Missouri prisoner to satisfy the exhaustion requirement, he must avail himself of the administrative grievance process established by the Missouri Department of Corrections.

> To initiate this process, an inmate must file an Informal Resolution Request ("IRR") within fifteen days of the date of the incident giving rise to the IRR. If the inmate is dissatisfied with the response to his IRR, he can file an Offender Grievance within seven working days of receiving the response. If the inmate is dissatisfied with the response to his Grievance, he can file a Grievance Appeal within seven days of receiving that response. The failure to file timely appeal will result in the appeal being considered abandoned. Only after the inmate receives a response to his Appeal is the administrative grievance procedure exhausted.

*Wewerka v. Roper*, No. 4:09CV1973 CDP, 2010 WL 4628093, at *2 (E.D. Mo. Nov. 8, 2010), *aff'd,* 431 F. App'x 517 (8th Cir. 2011). PLRA's administrative exhaustion requirement is an affirmative defense the defendant has the burden to plead and prove. *Nerness v. Johnson*, 401

F.3d 874, 876 (8th Cir.2005). However, a prisoner does not have to exhaust administrative remedies which are unavailable to him, either because the administrative process is unable or unwilling to provide relief. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

There is no evidence in the file to indicate Plaintiff filed a grievance after his IRR was denied, other than Plaintiff's unsubstantiated and uncited allegations in the complaint. While, Plaintiff did write a letter in response to the IRR denial, this was not a grievance, and Defendants timely responded to Plaintiff's letter. Further, Plaintiff submits no evidence other than his own vague allegation it was impossible to follow the administrative process. Finally, there is no evidence on the record, Plaintiff submitted an IRR for January 9th, 2014 incident. While, the Court recognizes the Plaintiff's pro se status, he is not exempt from the exhaustion requirements. Plaintiff has failed to exhaust his administrative remedies regarding the December 23rd, 2014 and January 9th, 2015 incidents.

  *B. Plaintiff's Excessive Force Claims*

Defendants argue Plaintiff's claims of excessive force as applied against him on December 23, 2014 and January 9, 2016, must be denied because the amount of force applied was necessary and appropriate to deal with Plaintiff's disruptive and violent behavior.

"The Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, and this protection is grounded upon their right to be free from unnecessary and wanton infliction of pain at the hands of correctional officers." *Jones v. Shields*, 207 F.3d 491, 494–95 (8th Cir.2000). However, correction officers are permitted to use reasonable force to maintain order or restore discipline. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002). Thus, "guards are liable only if they are completely unjustified in using force[.]"*Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir.2008). To prove an Eighth Amendment violation, a prisoner must establish two

7

requirements. *Id*. First, the prisoner must show a "sufficiently serious" deprivation of rights. *Id*. Second, the prisoner must prove the prison officials had a "sufficiently culpable state of mind." *Id*.

"[N]ot every push or shove violates the Constitution, but any use of force greater than de minimis, or any use of force that is 'repugnant to the conscience of mankind,' does." *Dormire*, 519 F.3d at 446 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)). The magnitude of any resulting injury, although relevant in determining whether force was excessive, is not a threshold requirement for proving an excessive force claim under the Eighth Amendment. *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir.2013). A limited application of force to control a recalcitrant inmate is a tempered response by prison officials, and should rarely be the proper basis for judicial oversight. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding pepper spray use demonstrated a tempered response).

### 1. *December 23, 2014 Incident*

Defendants argue Defendants Coffman and Henson did not use excessive force during the December 23, 2014 incident, and were acting in good faith to restore order and discipline. Plaintiff, in his complaint, made allegations regarding Defendants conduct, but because he did not respond to Defendants' Statement of Material Facts, the Court accepts the facts stated by the Defendants as true. *Reasonover*, 447 F.3d at 579. Plaintiff was verbally combative, threatened and spit at Defendant Henson while being escorted. Defendant Coffman used de minimis force, after issuing a warning, in an attempt to maintain control of the situation.

Plaintiff, after being warned a second time, was pushed against a wall, where he continued to be verbally combative. When Plaintiff was still attempting to resist Defendants' grip, a struggle to control Plaintiff ensued. Defendants called for backup to get control of Plaintiff, and

8

Defendants Coffman and Reed were required to seek medical attention as a result of the altercation, while Plaintiff received only minor cuts and bruises. Defendants' use of force to maintain control and discipline was reasonable, given the amount of resistance Plaintiff asserted.

Finally, Plaintiff alleges he was the subject of excessive force because his arms were pulled through the food port in Plaintiff's cell in an attempt to remove his restraints. Plaintiff's arms were pulled only after Defendant Reed's arms were pulled by Plaintiff, when Plaintiff had his restraints only partially removed, and partially removed restraints are considered a weapon. This was also an appropriate use of force in the situation made in good faith to maintain order. Further, Plaintiff only received minor cuts and a sore shoulder as a result and the level of injuries received by Plaintiffs. While degree of injuries is not dispositive, they are evidence Plaintiff was not subject to excessive force. Again, Defendants use of force was reasonable under the circumstances, and no more than necessary for the situation. The Court rejects Plaintiff's claims of excessive force during the December 23, 2014 incident.

2. *January 9, 2015 Incident*

Defendants argue Defendant Brouk did not use excessive force during the January 9, 2015 incident. Plaintiff alleges Defendant Brouk sprayed mace into Plaintiff's cell without reason after Plaintiff flushed his toilet after a cell search had been announced and Defendant Brouk acted in a guilty state of mind in his complaint. [ECF No. 6 at 8]. The evidence on the record is Defendant Brouk directed Plaintiff to stop flushing the toilet, Defendant Brouk sprayed a burst of pepper spray when Plaintiff did not comply, and only after Plaintiff ignored Defendant Brouk's first order did he shoot another burst of pepper spray. Afterwards Defendant Brouk allowed Plaintiff to receive medical treatment for the pepper spray. Defendant Brouk's actions are in compliance with policy to prevent the destruction of evidence, hiding weapons, or disposing of contraband.

9

Defendant used an appropriate amount of force on Plaintiff, after a warning, and allowed Plaintiff to seek medical attention afterwards. These are not the type of actions which support an excessive force claim under the Eighth amendment. Plaintiff's claims will be denied.

    *C. Deliberate Indifference to a Serious Medical Need Claim*

Plaintiff, in his complaint, alleges Defendants were deliberately indifferent to his serious medical needs because they refused to let him seek medical attention after the December 23rd incident. Defendants argue he cannot show any Defendant personally violated his rights, Plaintiff did not have serious medical needs, and if he did, Defendants should not have been aware of such needs.

To state a constitutional claim for medical mistreatment, a plaintiff must plead facts sufficient to indicate a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). "[The Eighth Circuit] ha[s] defined a serious medical need as 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos*, 73 F.3d at 176 (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). In order to show deliberate indifference, Plaintiff must allege he suffered objectively serious medical needs and Defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Medical malpractice, an inadvertent failure to provide adequate medical care, and negligence do not rise to this standard. *Id*. at 1243. A plaintiff must prove the defendant medical professionals were more than negligent, and had a mental state "akin to criminal recklessness" to successfully claim a deliberate indifference claim. *McCaster v. Clemons*, 684 F.3d 740, 746 (8th Cir. 2012), *quoting Gorden ex. Rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

After the December 23rd incident Plaintiff alleges in his complaint he requested a nurse's attention while in administrative segregation, but does not allege any Defendant was present. This prevents a claim for an Eighth Amendment violation because there is no evidence any Defendant personally violated his rights. Further, Plaintiff alleged he received ointment for his cuts and bruises, and received ibuprofen for a hurting shoulder. Finally, after each incident Plaintiff was allowed to see a medical professional. This is not the type of serious medical need a lay person would recognize as requiring medical attention, Defendants were not present for Plaintiff's additional alleged request to see a nurse, and when Plaintiff requested to see a medical professional, Defendants allowed him to do so. Plaintiff's claim for deliberate indifference to his serious medical needs is denied.

### D. Qualified Immunity

Defendants also argue in their motion for summary judgment, they are entitled to qualified immunity on all of Plaintiff's claims. Qualified immunity protects "[g]overnment officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To assess whether a government actor is entitled to qualified immunity, courts apply a two-part test on summary judgment, asking (1) whether the plaintiff has shown a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged constitutional deprivation. *Pearson v. Callahan*, 129 S.Ct. 808, 815–16, 818 (2009).

As noted above, Defendants did not violate the Eighth Amendment because they neither used excessive force, nor were they deliberately indifferent to Plaintiff's serious medical needs. When balanced against the Defendants safety concerns, Defendants use of force was reasonable under

the circumstances. Since Plaintiff cannot meet the first step of the qualified immunity analysis, there is no need for the Court to progress to the second step of this test. *Ware v. Morrison*, 276 F.3d 385, 388 (8th Cir. 2002). Defendants are entitled to qualified immunity.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 28] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED, with prejudice**.

So Ordered this 28th Day of September, 2016.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE